Rudolfo MATA, Appellant,

v.

ANDREWS TRANSPORT, INC., Appellee.

No. A14–94–00259–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 13, 1995.

Edward L. Noah, Houston, for appellant.

Deanna Dean Smith, Houston, for appellee.

Before MURPHY, ANDERSON and HUDSON, JJ.

## OPINION

ANDERSON, Justice.

This is an appeal from a summary judgment. In one point of error, Rudolfo Mata challenges the grant of summary judgment on the ground that federal law precludes appellee's state law defense that the driver of a truck involved in the collision was not acting in the course and scope of his employment. Holding that federal law does not impose such strict liability upon commercial carriers for the negligence of their drivers, we affirm the trial court's judgment.

Appellant sued appellee for damages for personal injuries suffered when a truck bearing appellee's insignia collided with appellant's vehicle. Appellee was a commercial carrier who leased the truck involved in the collision. Appellant also sued the lessor/owner and driver of the truck, Stephen Joe Henry. Appellee filed a motion for summary judgment, contending that no fact issues existed to prove that Mr. Henry was driving within the course and scope of his employment at the time of the collision. Appellant then filed a second amended original petition asserting provisions of the Interstate Common Carrier Act and ICC regulations. Appellant also filed a response to the motion, arguing application of these regulations. After a hearing, the trial court granted appellee's motion.

Before turning to appellant's challenge to the summary judgment, we must address appellee's claim that this appeal was not timely perfected and should be dismissed for want of jurisdiction. The trial court granted appellee's motion for summary judgment on December 29, 1993. This did not become a final, appealable order, however, until January 25, 1994, when the trial court granted a severance from the claims against the driver of the truck. Appellant filed a motion for new trial on February 9, 1994. After this motion was denied, appellant perfected this appeal by a cash deposit on March 16, 1994.

Appellee contends that appellant's motion for new trial was untimely and that appellant's cash deposit in lieu of an appeal bond was also untimely. Rule 41 sets out the requirements for perfecting an appeal:

> When security for costs on appeal is required, the bond or affidavit in lieu thereof shall be filed with the clerk within thirty days after the judgment is signed, or, within ninety days after the judgment is signed if a timely motion for new trial has been filed by any party....

Tex.R.App.P. 41(a)(1).

■ Appellee's argument would have merit if the date of the final judgment was December 29, 1993, the date the trial court granted the summary judgment motion. This, however, is not the date of the final judgment. The order of December 29, 1993 was merely an interlocutory order and unappealable because the order did not dispose of all parties and causes of action. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985). The order granting summary judgment did not become a final judgment until the trial court granted a severance on January 25, 1994. *See id.; North East Indep. School Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). Thus, the time periods for filing a motion for new trial and for perfecting an appeal did not begin until January 25, 1994. Calculating from this date, appellant's motion for new trial was timely filed and this appeal was timely perfected.

■ Appellant raises one point of error, challenging the grant of summary judgment. The question on appeal is whether the sum-mary judgment proof establishes as a matter of law that "there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). In determining whether there is a disputed material fact issue precluding summary judgment, we must take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In its motion for summary judgment, appellee contended that no fact issues existed to show that Stephen Joe Henry was acting within the course and scope of his employment when he collided with appellant's vehicle. In response, appellant raised ICC regulations, contending that these imposed liability on the employer even if there would be no liability under state law. Appellant asserts that these regulations preempt state law regarding course and scope of employment.

In 49 U.S.C.A. § 11107, Congress delegated to the Interstate Commerce Commission the power to impose certain requirements on carriers in the operation of motor vehicles, which they do not own, in providing transportation subject to the Commission's jurisdiction. This statute authorizes the Commission to impose certain requirements upon the lease of commercial truck-tractors. *See* 49 U.S.C.A. § 11107 (1994). Both federal regulations promulgated to effect these statutory guidelines and Texas law require a written lease providing the name and address of the person other than the owner of the vehicle under whose supervision, direction, and control the vehicle will be operated, and providing that the operation of the truck-tractor shall be under the full and complete control and supervision of the lessee (non-owner). *See* 49 C.F.R. § 1057.12(b); Tex.Rev.Civ. Stat.Ann. art. 6701c–1, § 4 (Vernon Supp. 1995). In Texas, the lease must be filed with the Texas Department of Public Safety. *See* Tex.Rev.Civ.Stat.Ann. art. 6701c–1, § 2 (Vernon Supp.1995).

Because these laws require the lease to include language imposing complete control of the leased vehicle in the lessee, appellant

contends that these laws essentially impose strict liability on the lessee for negligent operation of the vehicle causing injury to others. The purpose of these laws was to stop the practice of leasing vehicles under informal, oral arrangements that, among other things, "made the fixing of the lessee's responsibility for accidents highly difficult." *American Trucking Ass'ns v. United States,* 344 U.S. 298, 305, 73 S.Ct. 307, 312, 97 L.Ed. 337 (1953). Thus, the federal statute was construed "to protect the public from the tortious conduct of judgment-proof operators of interstate motor carrier vehicles...." *Price v. Westmoreland,* 727 F.2d 494, 496 (5th Cir.1984).

In applying these laws, courts have developed and applied the "statutory employee" principle. This principle holds a carrier vicariously liable for injuries resulting from a driver's negligent operation of the truck when three factors are present:

(1) the carrier does not own the vehicle;

(2) the carrier operates the vehicle, under an "arrangement" with the owner, to provide transportation subject to the Commission's jurisdiction; and

(3) the carrier does not literally employ the driver.

*John B. Barbour Trucking Co. v. State,* 758 S.W.2d 684, 688 (Tex.App.—Austin 1988, writ denied). In these circumstances, the courts hold that the driver is the constructive or "statutory" employee of the carrier and that the carrier may be vicariously liable for the employee's negligence through the doctrine of respondeat superior. *Id.* The "statutory employee" principle, however, is not one of strict liability and the carrier may raise any defense available to an employer under state law. *Id.*

Under Texas law, employers may be held liable for negligent acts by their employees under a theory of respondeat superior only if the employee's actions are in the course and scope of their employment. *See Drooker v. Saeilo Motors,* 756 S.W.2d 394, 396 (Tex.App.—Houston [1st Dist.] 1988, writ denied). To show that a party acted within the course and scope of his employment, a plaintiff need not show the negligent act was expressly authorized by the employer. *Id.* at 397. Instead, the plaintiff need only show that the act was:

(1) within the general authority given him;

(2) in furtherance of the employer's business; and

(3) for the accomplishment of the object for which the employee was employed.

*Id.*

Employers generally are not liable for accidents involving their employees while they are travelling to and from work. *See Texas General Indem. Co. v. Bottom,* 365 S.W.2d 350, 354 (Tex.1963). There is a presumption that an employee is within the course and scope of employment while travelling to and from work if the employer owns the vehicle and regularly employs the driver. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971). The employer may rebut this presumption with evidence that the employee was not in the course and scope of employment. *Id.* This presumption is inapplicable in this case because appellee did not own the truck involved in the collision.

Another exception to the general rule removing liability from an employer for collisions involving employees driving to and from work is where the employee was furthering the employer's business and being compensated for the time. *See Texas Gen. Indem. Co.,* 365 S.W.2d at 354. Appellee attached portions of Mr. Henry's deposition in which he stated that he was commuting from his home in Austin to appellee's shipping yard in Houston at the time of the collision. Mr. Henry further stated that appellee did not designate a specific route, did not compensate him for the commute, and did not supply fuel for this trip. Appellant did not present any evidence to contradict appellee's testimony. Thus, the second exception regarding travel to and from work does not apply. The summary judgment proof establishes that Mr. Henry was not acting within the course and scope of his employment when the collision occurred. Therefore, the trial court properly granted

summary judgment in favor of appellee. We overrule appellant's sole point of error.

We affirm the judgment of the trial court.